**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-6200**

QUENTIN ROBERT BRASWELL,

Petitioner - Appellant,

v.

DONNA M. SMITH,

Respondent - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, Chief District Judge. (5:18-hc-02085-BO)

Argued:  January 28, 2020                                    Decided:  March 4, 2020

Before DIAZ, THACKER, and QUATTLEBAUM, Circuit Judges.

Reversed and remanded by published opinion.  Judge Thacker wrote the opinion, in which Judge Diaz and Judge Quattlebaum joined.

**ARGUED:**  Jennifer Claire Leisten, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Evan Rikhye, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

THACKER, Circuit Judge:

In *United States v. Wheeler*, this court set forth a four part test to determine whether an individual can seek relief from an erroneous sentence in a 28 U.S.C. § 2241 habeas corpus petition via the "savings clause" of 28 U.S.C. § 2255(e). 886 F.3d 415 (4th Cir. 2018). The savings clause provides that a court may entertain a traditional § 2241 petition if the petitioner can demonstrate a § 2255 motion is "inadequate or ineffective to test the legality of his detention." *Id*. at 419 (quoting § 2255(e)). In order for a petitioner to meet this standard, he must demonstrate:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

*Id*. at 429 (the "*Wheeler* test").

In this case, Quentin Braswell ("Appellant") appeals from the district court's denial of his § 2241 petition, which he sought to file via the savings clause. The district court reasoned that Appellant could not meet the second prong of the *Wheeler* test because Appellant filed his first § 2255 motion *after* the applicable change in settled substantive law, even though that § 2255 motion was resolved *before* that change in law was deemed to apply retroactively on collateral review.

We reverse. In applying the second *Wheeler* prong, we look to the time of the "retroactive change in law," i.e., the *combination* of the change in law and its retroactivity.

2

886 F.3d at 429. Thus, for the reasons that follow, in the unique circumstance where the change in settled substantive law occurred before a petitioner filed his or her first § 2255 motion, but such change was deemed retroactive after the resolution of the petitioner's first § 2255 motion, the petitioner satisfies the second prong of *Wheeler*. We remand for proceedings consistent with this opinion.

I.

On July 9, 2009, a federal grand jury in the Eastern District of North Carolina indicted Appellant on gun and drug charges. The Government filed an Information of Prior Convictions for Enhancement of Sentence pursuant to 21 U.S.C. § 851 (the "Information"), which stated that Appellant was subject to an enhanced sentence based on a 1997 North Carolina conviction for possession with intent to sell cocaine (the "1997 Conviction"). The Information alleged that the 1997 Conviction was a "felony drug offense[]" that subjected Appellant to an enhanced sentence pursuant to 21 U.S.C. § 841(b).[1] J.A. 21.[2]

---

[1] At the time Appellant was charged, convicted, and sentenced, § 841(b) provided that "any person who violates [§ 841(a) for possession or distribution of drugs involving five grams or more of crack cocaine]" and "commits such violation after a prior conviction for a felony drug offense has become final . . . shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment." 21 U.S.C. § 841(b)(1)(B) (2009). In the absence of a prior felony drug offense, the term of imprisonment "may not be less than 5 years and not more than 40 years." *Id.*

"Felony drug offense" was, and still is, defined as "an offense that is punishable by imprisonment for more than one year under any law . . . of a State." 21 U.S.C. § 802(44).

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

On September 11, 2009, the grand jury returned a superseding indictment charging Appellant with two counts of distribution of five grams or more of crack cocaine and aiding and abetting pursuant to 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Counts One and Two); one count of possession with the intent to distribute a quantity of cocaine pursuant to § 841(a)(1) (Count Three); one count of possession of firearms in furtherance of a drug trafficking crime pursuant to 18 U.S.C. § 924(c)(1)(A) (Count Four); and possession of firearms by a felon pursuant to 18 U.S.C. § 922(g)(1) (Count Five).  Appellant pled guilty to Counts Two and Four of the superseding indictment on November 4, 2009.

Appellant's sentencing hearing took place on May 10, 2010.  Because of the Information, the statutory range to which Appellant was subjected on Count Two was ten years to life imprisonment, to be followed by a term of supervised release of eight years. *See* 21 U.S.C. § 841(b)(1)(B) (2009).  Absent the Information, Braswell's statutory sentencing range on Count Two would have been five to 40 years, and his term of supervised release would have been four years. *See id.*

At sentencing, the district court accepted the Presentence Investigation Report, which designated Appellant as a career offender pursuant to § 4B1.1 of the United States Sentencing Guidelines (the "Guidelines").[3]  Appellant's resulting advisory Guidelines range was 262 to 327 months of imprisonment on Count Two, and a consecutive sentence

---

[3] The career offender enhancement applies when a defendant has two or more prior felony convictions of either a "controlled substance offense" or "crime of violence," each of which was "punishable by imprisonment for a term exceeding one year."  U.S.S.G. §§ 4B1.1(a), 4B1.2(a), (b) (2009).

4

of 60 months of imprisonment on Count Four, for a total of 322 to 387 months, plus eight years of supervised release. The district court sentenced Appellant to 262 months on Count Two, and 60 months on Count Four, for a total of 322 months. On March 18, 2011, this court affirmed Appellant's conviction and dismissed his challenge to his sentence based on the appellate waiver in his plea agreement. *See United States v. Braswell*, 418 F. App'x 195, 196 (4th Cir. 2011).

On August 17, 2011, five months after Appellant's direct appeal proceedings ended, this court held that, in considering whether North Carolina drug convictions are "felony drug offense[s]" pursuant to 21 U.S.C. § 802(44), the Government cannot rely on a hypothetical maximum term of imprisonment to determine if the crime was punishable by "imprisonment for more than one year." *United States v. Simmons*, 649 F.3d 237, 239 (4th Cir. 2011) (en banc) (quoting § 802(44)) (hereinafter "*Simmons*"). Rather, the sentencing court "may only consider the maximum possible sentence that the *particular* defendant could have received." *Wheeler*, 886 F.3d at 420 (discussing *Simmons*) (emphasis in original) (internal quotation marks omitted).

On March 10, 2012, Appellant moved to vacate his sentence pursuant to § 2255. He argued that he should not have been deemed a career offender because, based on *Simmons*, Appellant did not "have a predicate offense." J.A. 88. In response, the Government "concede[d] that, as a result of *Simmons*, [Appellant's 1997 Conviction] is not punishable by more than one year imprisonment, and therefore he lacks the necessary predicates for career offender status." *Id.* at 101–02. The Government also "concede[d] that, as a result of *Simmons*, th[e] [1997] [C]onviction could not form the basis for a § 851 enhancement.

5

The statutory punishment range on Count Two therefore should have been 5 years to 40 years, not 10 years to life. However, the sentence actually imposed on Count Two -- 262 months -- was still within the correct statutory range." *Id*. at 103 n.1.

On February 19, 2013, the district court adopted the magistrate judge's recommendation and dismissed the § 2255 motion. This recommendation was based on three grounds: (1) Appellant was barred from challenging his sentence by the waiver in his plea agreement; (2) even if the 1997 Conviction was no longer a qualifying prior offense for a career offender enhancement, Appellant was nonetheless sentenced within the unenhanced statutory maximum of 40 years and thus, his § 2255 claim was "not cognizable and should be dismissed"; and (3) *Simmons* had not been deemed retroactive on collateral review. J.A. 124. Six months later, on August 21, 2013, this court held that *Simmons* applied retroactively on collateral review. *See United States v. Miller*, 735 F.3d 141, 147 (4th Cir. 2013).

After *Simmons*, Appellant filed at least one other § 2255 motion, arguing that *Simmons* "would prevent [Appellant's] [1997 Conviction] from being used to support a 21 U.S.C. § 851 [Information] because [Appellant's] prior drug convictions were not punishable by a term of imprisonment exceeding one year." J.A. 163–64 (filed Nov. 21, 2016) (emphases omitted). The district court denied the motion because Appellant did not seek the proper authorization from this court to file a successive § 2255 petition.

This court decided *United States v. Wheeler* on March 28, 2018, developing a test for petitioners seeking to file a § 2241 petition. In that case, Gerald Wheeler attempted to use § 2241 via the savings clause of § 2255(e) to challenge the use of his prior North

6

Carolina drug conviction for a § 851 sentencing enhancement. While his petition was pending, this court decided *Miller*. Unlike Appellant, Wheeler filed his first § 2255 motion before *Simmons* was decided, not after.

Based on *Wheeler*, on April 11, 2018, Appellant filed a pro se § 2241 petition for writ of habeas corpus. On January 29, 2019, the district court dismissed the petition. The district court concluded that Appellant could not meet the second prong of *Wheeler* and pass through the savings clause because "*Wheeler* requires both the substantive law to change and for that change to be retroactive subsequent to petitioner's first § 2255 motion." J.A. 236. Thus, the district court concluded, because "the substantive law set forth in *Simmons* changed prior to [Appellant's] § 2255," he could not satisfy prong two. The district court also explained in a footnote that Appellant's *Simmons* claim was barred by the waiver in his plea agreement. Appellant timely noted this appeal.

## II.

We review legal issues concerning the savings clause of § 2255(e) de novo. *See United States v. Wheeler,* 886 F.3d 415, 422 (4th Cir. 2018).

## III.

### A.

*The Wheeler Test*

Again, the *Wheeler* test provides that a petitioner can pass through the savings clause if:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255

7

> motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

*United States v. Wheeler*, 886 F.3d 415, 429 (4th Cir. 2018). "[T]he savings clause requirements are jurisdictional," *id*. at 426, so we independently examine whether all four prongs of the *Wheeler* test are met. *See United States v. Urutyan*, 564 F.3d 679, 684 (4th Cir. 2009) (a federal court is "obliged to satisfy [itself] of subject-matter jurisdiction").

1.

*Prong One*

The first *Wheeler* prong requires that, "at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence." 886 F.3d at 429. Appellant easily satisfies this prong because in May 2010, the *Simmons* panel decision had been vacated and the en banc decision had not yet been issued. The then-prevailing decision of *United States v. Harp* held, "[T]o determine whether a conviction is for a crime punishable by a prison term exceeding one year [under North Carolina law], . . . we consider the maximum *aggravated* sentence that could be imposed for that crime upon a defendant with the worst possible criminal history." 406 F.3d 242, 246 (2005) (emphasis in original). A defendant theoretically could have received a sentence of more than one year in prison for the 1997 Conviction; thus, it was a prior offense that could validly enhance Appellant's sentence pursuant to § 841(b) and § 851.

8

## 2.

### *Prong Two*

#### a.

The second prong of *Wheeler* requires, "[S]ubsequent to the prisoner's direct appeal and first § 2255 motion, the . . . settled substantive law changed and was deemed to apply retroactively on collateral review." 886 F.3d at 429. As to prong two, the district court concluded:

> [Appellant] is unable to establish prong two of *Wheeler* because *Simmons* was issued before [he] pursued his first § 2255 motion. In fact, [Appellant] unsuccessfully raised a *Simmons* claim in his first § 2255 motion. Although *Simmons* was made retroactively applicable to cases on collateral review subsequent to the denial of [Appellant's] § 2255 motion, *Wheeler* requires both the substantive law to change and for that change to be retroactive subsequent to [Appellant's] first § 2255 motion. Because the substantive law set forth in *Simmons* changed prior to [Appellant's] § 2255, he cannot satisfy *Wheeler*.

J.A. 236 (citations omitted).

Appellant's direct appeal concluded in March 2011; the *Simmons* en banc decision was issued in August 2011; Appellant's first § 2255 was filed in March 2012 and his first § 2255 proceedings ended in February 2013; and *Simmons* was made retroactive in *Miller* six months later, in August 2013. Appellant argues that, even though the "settled substantive law" did not change (i.e., the *Simmons* en banc decision was not issued) "subsequent to the prisoner's . . . first § 2255 motion," *Wheeler*, 886 F.3d at 429, "the date of retroactivity -- not the date of the substantive change in law -- is the controlling consideration in determining whether the second prong is met." Appellant's Br. 21. The

9

Government, in contrast, asks us to read prong two literally and in isolation from the rest of the opinion.

b.

Although prong two could be read literally such that the change in settled law *and* the retroactivity determination should *both* occur after the first § 2255 motion, the *Wheeler* test should not be interpreted so rigidly. *Wheeler* did not address the unique situation at hand, where the first § 2255 motion was filed between the change in substantive law and the declaration of its retroactivity. In considering these rare facts, we look to the entirety of the *Wheeler* opinion and conclude that, in order for a petitioner to satisfy prong two, the *combination* of the change in settled substantive law and its retroactivity must occur after the first § 2255 motion has been resolved.

i.

*Wheeler* demonstrates that the change in settled substantive law and retroactivity determination work together as a package deal. The change in settled substantive law "must have been made retroactive on collateral review. Otherwise, the prisoner would not be able to 'test the legality of his detention' in a § 2241 proceeding, which is the ultimate goal of the savings clause." *Wheeler*, 886 F.3d at 429 (quoting 28 U.S.C. § 2255(e)). We explained that on prong two, we look to the "retroactive change in law" as one moment in time. *Id*. For example, when discussing whether Wheeler met prong two, we explained:

> [T]he en banc *Simmons* decision, which abrogated *Harp*, was decided August 17, 2011, and was made retroactive on collateral review by *Miller* on August 21, 2013. *This all occurred* after Appellant's direct appeal, filed March 2008, and his first § 2255, filed June 2010. Although Appellant actually

10

raised a *Simmons* type claim in his first § 2255 on ineffective assistance of counsel grounds, the *Simmons* en banc decision itself could not have been invoked at that time because it did not exist.

*Id*. at 429–30 (emphasis supplied). Therefore, because the retroactivity determination occurred after the first chance Appellant had to "invoke[]" the change in settled law in a § 2255 motion, § 2255 remained "inadequate or ineffective" to test the legality of his detention.

Furthermore, prong four of *Wheeler* demonstrates that the date of retroactivity is the trigger for savings clause relief. That requirement states, "due to this *retroactive change* [*in settled law*], the sentence now presents an error sufficiently grave to be deemed a fundamental defect." 886 F.3d at 429 (emphasis supplied). It is the *retroactive* change, not just the change, in settled law that renders the sentence fundamentally defective.

ii.

Appellant's reading of prong two also furthers the purpose and policy behind the *Wheeler* opinion. Wheeler could not receive the benefit of *Simmons* because it "did not exist." 886 F.2d at 430. Here, Appellant could not receive the benefit of *Simmons* because it was not applicable retroactively on collateral review. In fact, the legal landscape existing at the time of Appellant's first § 2255 motion all but foreclosed this possibility. *See Carachuri-Rosendo v. Holder*, 560 U.S. 563, 575–76 (2010) (in holding that defendant's second Texas offense of simple drug possession was not an "aggravated felony," rejecting the "hypothetical approach" to prior convictions where "all conduct punishable as a felony" would be treated as "the equivalent of a conviction of a felony" (internal quotation marks

11

omitted)).  *But see United States v. Powell*, 691 F.3d 554, 560 (4th Cir. 2012) (holding that *Carachuri-Rosendo* is not retroactive on collateral review).  In this case and *Wheeler*, the petitioners in their first § 2255 motions could not rely upon the change in substantive law to correct their fundamental sentencing errors; thus, such motions were inadequate and ineffective to test the legality of their detention.

To hold otherwise would strip all meaning and purpose from § 2241 and *Wheeler* itself.  "[T]he privilege of habeas corpus entitles the prisoner to a *meaningful* opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law."  *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (emphasis supplied) (internal quotation marks omitted).  Accepting the Government's inflexible reading of prong two of the *Wheeler* test would deny relief to Appellant merely because he could cite to *Simmons* in his first § 2255 motion, even though the state of the law at the time precluded him from using it in his favor.  This is not a meaningful opportunity.

c.

In support of a literal and isolated reading of prong two, the Government posits, "The use of the word 'and' as opposed to 'or' is significant."  Gov't's Br. 17.  It also contends, "[T]here was no settled Fourth Circuit barrier or other barrier under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), to the Fourth Circuit's making a retroactivity determination on [Appellant's] first § 2255 motion," and therefore, "the absence of a holding of retroactivity at the time of a § 2255 motion would not present the kind of 'exceptional circumstance[]' that would require a § 2241 to step in and take the

12

place of § 2255." *Id*. at 18 (quoting *Wheeler*, 886 F.3d at 428) (citation omitted). We reject these arguments.

First, the Government believes it is significant that the *Wheeler* test contains "and" rather than "or." But if the test used the word "or," prong two would state: "subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed [*or*] was deemed to apply retroactively on collateral review." 886 F.3d at 429. This argument misses the point. No party is contending that prong two should be read in the disjunctive. Indeed, this reading would completely eliminate the retroactivity requirement altogether.

Second, the Government maintains that this court could have deemed *Simmons* retroactive during the proceedings on Appellant's first § 2255 motion, and therefore, Appellant does not present an "exceptional circumstance" worthy of habeas relief. But the same can be said for Wheeler himself. When Wheeler filed his first § 2255 motion before *Simmons*, he raised a *Simmons*-like argument. This court could have decided, as it did in *Simmons*, that the method of analyzing North Carolina prior felony convictions was erroneous, and Wheeler would have received relief.

Besides, this argument also misses the point. We explained in *Wheeler* that the purpose of traditional habeas relief was to "remedy statutory, as well as constitutional, claims presenting . . . exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is present." 886 F.3d at 428 (internal quotation marks omitted). Further, "if we held that a prisoner was foreclosed from seeking collateral relief from a fundamentally defective sentence, and 'through no fault of his own, has no source

13

of redress,' this purpose would remain unfulfilled." *Id*. (quoting *In re Jones*, 226 F.3d 328, 333 n.2 (4th Cir. 2000)) (emphasis omitted). Thus, Appellant, like Wheeler, presents an exceptional circumstance -- at the time of his first § 2255 motion, he was foreclosed from collateral relief because *Simmons* was inaccessible to him. If we adopted the Government's contrary view, we would in essence punish Appellant for being too diligent or for submitting his petition to an efficient court. If Appellant had waited longer to file his first § 2255 motion, or if the district court had processed his case more slowly, his claims could have been successful.

For these reasons, Appellant has satisfied prong two of the *Wheeler* test.

### 3.

### *Prong Three*

Prong three of the *Wheeler* test provides that the prisoner must be "unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions." 886 F.3d at 429. Appellant easily meets this requirement because he is invoking *Simmons*, which is not a rule of constitutional law made retroactive by the Supreme Court on collateral review. *See* § 2255(h)(2).

### 4.

### *Prong Four*

Finally, *Wheeler* prong four requires that "due to th[e] retroactive change [in settled substantive law], the sentence now presents an error sufficiently grave to be deemed a fundamental defect." 886 F.3d at 429. The Government concedes that Appellant satisfies

prong four under *Wheeler*, but it takes issue with *Wheeler*'s established holding that an increase in a mandatory minimum is a fundamental defect.

In both *Wheeler* and this case, the mandatory minimum was increased from five to ten years. And in *Wheeler*, we specifically rejected the argument (which the Government attempts to rehash here) that "any sentence that falls at or below the statutory maximum does not present a fundamental defect." 886 F.3d at 432. We explained, "An increase in the congressionally mandated sentencing floor implicates separation of powers principles and due process rights fundamental to our justice system." *Id*. at 430. The defect is fundamental because it "wrongly prevent[s] [the sentencing court] from exercising the proper range of [its] sentencing discretion." *Lester v. Flournoy*, 909 F.3d 708, 713 (4th Cir. 2018) (discussing *Wheeler* prong four). Because Appellant's mandatory minimum was erroneously increased, according to *Wheeler*, his sentence "presents an error sufficiently grave to be deemed a fundamental defect." 886 F.3d at 433. Therefore, Appellant satisfies prong four as well.

We make clear, however, that Appellant's satisfaction of prong four is based on the increase in his mandatory minimum, not on his career offender designation. As we stated in *United States v. Foote*, a "fundamental defect or a complete miscarriage of justice" has not occurred where the petitioner was sentenced as a career offender "under an advisory Guidelines scheme." 784 F.3d 931, 932, 941 (4th Cir. 2015). *But see Lester*, 909 F.3d at 716 (holding that the petitioner was entitled to proceed pursuant to § 2241 on his claim that he had been improperly sentenced as a career offender under the Guidelines when they were *mandatory*). Here, Appellant was deemed a career offender under an advisory

15

Guidelines scheme; thus, to the extent Appellant bases his *Wheeler* claim on his career offender designation, he does not satisfy prong four.

B.

*Plea Agreement Waiver*

The district court noted that Appellant's § 2241 petition is barred by the waiver in his plea agreement, which stated in relevant part:

> The Defendant agrees . . . [t]o waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing, and further to *waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea.* The foregoing appeal waiver does not constitute or trigger a waiver by the United States of any of its rights to appeal provided by law.

J.A. 241 (sealed) (emphasis supplied). On direct appeal, this court found the waiver to be knowing and voluntary. *See United States v. Braswell*, 418 F. App'x 195, 196 (4th Cir. 2011). However, this Court will not enforce an otherwise valid waiver if "to do so would result in a miscarriage of justice," *United States v. Adams*, 814 F.3d 178, 182 (4th Cir. 2016), or where there is an "illegal sentence . . . involv[ing] fundamental issues," *United States v. Copeland*, 707 F.3d 522, 530 (4th Cir. 2013) (alteration and internal quotation marks omitted). *But see United States v. Archie*, 771 F.3d 217, 223 (4th Cir. 2014) ("[W]e . . . decline[] to enforce a valid appeal waiver only where the sentencing court violated a

fundamental constitutional or statutory right that was *firmly established at the time of sentencing*." (emphasis supplied)).

Although a heading in the Government's brief states that the district court "did not err in determining that the waiver in his plea agreement effectively bars [Appellant] from challenging his sentence," Gov't's Br. 18, it fails to develop this argument. Rather, the Government concedes that *Wheeler* renders the plea agreement waiver invalid as to Appellant's § 2241 petition. *See id.* at 19 n.4 ("*Although*[] *this argument is now foreclosed by Wheeler*, the United States believes that the waiver in the plea agreement signed by [Appellant] remains valid." (emphasis supplied)). In the entirety of its response brief, and even during oral argument, the Government failed to invoke the waiver or claim that the appeal should be dismissed based thereon under current law. Rather, it argues that an increase in a mandatory minimum sentence is not a fundamental defect resulting in a miscarriage of justice. As the Government also acknowledges, however, this argument is wholly foreclosed by *Wheeler*. Therefore, we decline to hold that Appellant is foreclosed from bringing this § 2241 petition based on the Government's enforcement of the waiver in his plea agreement. *See United States v. Brock*, 211 F.3d 88, 90 (4th Cir. 2000) (declining to address plea agreement waiver issue where "the Government expressly elected not to argue waiver"); *see also United States v. Poindexter*, 492 F.3d 263, 271 (4th Cir. 2007) (noting the government can elect not to enforce an appeal waiver and instead contest the merits of a defendant's argument).

## IV.

For these reasons, we reverse the dismissal of Appellant's § 2241 petition, and remand for proceedings consistent with this opinion.

*REVERSED AND REMANDED*